This is 14-4192 and 14-4249 U.S.A. v. Benjamin Suarez. Our argument continues per side. Mr. Chanel will give help. Hold on one second. Just let people get seated and get their water. Absolutely, Your Honor. Okay, you may proceed. Your Honor, I've asked to reserve seven minutes, if I may. Good morning, Your Honor. May it please the Court, opposing counsel, Madam Clerk. Benjamin Suarez is 73 years old and he sits in a federal prison. He's there today because the district court instructions removed the intent element of the attempt offense that he was convicted of. This error should result in setting aside his conviction and his immediate release from prison. Your Honor, we've raised two claims. I'd like to address them separately, if I may. The two claims are the attempt instruction and duplicity as it relates to the questions that came up on this count eight. Both are presented and should be reviewed de novo. The intent, the error, is per se harmful and the duplicity exposes him to double jeopardy. I apologize. I have a little bit of a cold, Your Honor. As this court recognized in its opinion in Ments, United States v. Ments, Judge Boggs authored, where a jury sits as a finder of fact in a criminal trial, the court's instructions to the jury concerning the necessary elements of the crime are the only means of assuring the government put to its burden of establishing every element of a crime. That did not happen here. Essentially, the way the instruction went to the jury, it went as though it was a directed verdict on the question of intent. And so Mr. Suarez was denied his constitutional right to have the jury find the intent element. But you have to read the instructions as a whole, right? Yes, Your Honor. So weren't they told that he had to knowingly do something and that in doing so he had to intend to influence, delay, or prevent testimony? The instruction required a jury only to find the absence of accident, excuse me, accident. This is cold medicine I'm taking. It's drying me out. I apologize. That's the position the government takes in their brief. The government wants us to look now, wants the court to look now at this as though somehow the knowing is the same as the intent, and it's not, Your Honor. It doesn't get them there. The way they break this down, and I refer to our brief in the way we lay this out on what the actual intent element is, the intent to commit the crime, that's what the jury should have heard. That was what was laid out exactly in the pretrial brief that was filed where we objected to the government's attempt instruction. We objected, filed it with the court, and properly laid out what the intent instruction should have been, and that should have gone to the jury. This case is interesting in that there really isn't any dispute about the facts. The entire case, all 19 counts, went to the jury, and really the only issue was intent. In all the other counts, the intent element was properly before the jury, and the jury acquitted. Okay. Well, you didn't really answer my question, but you brought up the instruction. As I understand it, you submitted instructions. After that, there was a joint document that was prepared, or that the government prepared, but it was supposed to include all of your objections. Is that correct? If I can just sort of explain it the way it worked, the court had the order, and the order was that the parties were supposed to get together and file a joint trial brief. The government submitted its joint trial brief, and it mentioned a couple of Mr. Giorgio, who was already at that point in negotiations to plea and actually pled guilty. Mr. Giorgio, they raised a couple of issues in their brief that said Mr. Giorgio objects with no underlying basis, no underlying reasoning, no case law, and I think we, and I say we, Mr. Suarez and the corporation co-defendant submitted a similar trial brief where we specifically went through and laid out each of the issues that we were raising for the court. Okay, so I want to make sure I understand. Yes, sure. The court says I want a joint order. Is that correct? Correct. And you each filed your own? Correct. In response to that? There's an intervening factor, and I think that's in the record here, and it has to do with Mr. Giorgio's counsel contacting the court, and Mr. Giorgio's counsel contacted the court, and then his counsel, one of the lawyers for Mr. Giorgio was sort of the liaison directly to the court and communicated back that the court really was looking for what we agreed on and then separately filed the things, whether it was questions about voir dire, other motions in limine, separately. And so when that went in to the court, they went in together, ours, Mr. Suarez's, and SCI's, at the same time that the government filed theirs, neither one of which specifically follows the court's pretrial order. The court didn't take any action that they were filed. They weren't rejected. There was a pretrial conference that occurred. Didn't the court in this conference say at the beginning of the conference that the court stated it was working from the annotated set of proposed instructions submitted by the government? I think the answer, Your Honor, is we're talking about two different things, if I may, Your Honor. What Judge White is asking about was what was filed before the trial began and what was filed in the court. And then, right, correct, Your Honor. And so those two things were filed, those two different pretrial orders. They went to the court. The court then later said on the record that the district court carefully reviewed all of the motion, all of the briefs that were filed. The government put on its case. We had about a month of trial. Mr. Giorgio had subsequently pled guilty and testified. He's only involved as a witness at the trial. Concluding the government's case, the company, the co-defendant company, put on a very brief case. The government said they had no rebuttal case. The judge sent the jury home for the day and had an off-the-record discussion in chambers. And in chambers was working primarily from the government's pretrial brief. He said specifically that. Correct. But if you look, Your Honor, at what Mr. Suarez and SCI filed and you look at the destructions that were given, and it's really spelled out, I think, pretty well in our brief, if you look at what was submitted, particularly on the willful issue, the only place in the entire case where Mr. Suarez raises the issue on willfulness, which was very, very important to the acquitted charges, the only place this was raised is in that pretrial memo, that pretrial brief that Judge White was just asking about. Nobody had other opportunities at trial, both before and after the instructions to complain. I'm not disputing, Your Honor. And he didn't. That's correct. That is correct. Isn't that a waiver? It's not. It's not, Your Honor. It's not for a variety of reasons. First of all, the only time that the opinion came out that Your Honor is referring to and quoting from about the problems, I'll call them the problems, with the two competing pretrial briefs, the only time that came out was almost five and a half months after they were filed. But that's not the point. You're in conference with the judge. The judge is saying what instructions are going to be given. And you have to say, well, wait, we objected to that instruction. We gave you a different instruction. And during the – here's what I say. I know that a couple of Your Honors have been trial judges. And I'm sorry, my time is – may I finish this question? Go ahead. In a situation like this where under Gradsky, which I think is clearly the law in this circuit, and you go in and you file written objections, clearly spelling out, these are our objections, this is the proposed jury instruction that we feel is the correct jury instruction, which I don't want any of us to lose sight of it, that it is the correct jury instruction that we had proffered to the court. And the court says, this is what I'm going on, this is what I'm doing, this is what I've decided, we're going to go through them. To object again is not necessary under the law in this circuit. And to find that it was so would be the first time – The problem is this judge had no idea that you objected to that instruction. With all due respect, Your Honor, I think that's absolutely wrong. The record here is clear. When the judge says – when she accepts that – and again, I'm over. May I finish? Usually trial judges, after they give the instruction, turn to counsel and say, got any objections or got any comments? As I read the record, that did happen. The court said, were there any objections? And he says, on behalf of the government, any objections? No. On behalf of Mr. Suarez, Mr. Schaml says, no objections. Not, no objections beyond those we already made, or, you know, we refer to our objections, said, no objections. It's a fair point. That is exactly what the – and I think if you look at the entirety of the record and the other times during the course of the trial where objections are made and said it's already been made, it's already been preserved, it's already in the record, and to Judge White, to your point – But usually counsel says that. Judge, the only objections I have are, my instructions were different than what you gave. I mean, that's what the judge is saying. Some can invite error and say, no, we agree with your instructions. Well, that's different. That's different. And there's actually a case, and I'm escaping me at the moment, but there's a case in this circuit that actually differentiates on that basis. If you say, I'm repudiating my objection, to your point, Judge White, we specifically filed a written objection. Yes, and the judge – a judge specifically asked you, do you have any objections to what I gave? No, actually, Your Honor, that's not what she said. She didn't say, do you have any objections to what I gave, as in, do you want to renew your objections that have already been made in writing and not waived? She said, are there any objections? Presumably, did I read correctly what I had written and I had provided to you and told you I was going to give the jury instructions? I don't know. We'll have to decide that interpretation. We'll have your time for rebuttal. Thank you. I believe it's now good afternoon. Good afternoon, Your Honors. Carol Rendon, along with Rebecca Lutzko and Matthew Cronin, on behalf of the United States. And I want to start by addressing the County Instruction. And what I want the Court to understand is that at the time that the County Instruction was given, it was both legally correct and sufficient. And that's why, when asked by the Court, on the record, at the appropriate time under Rule 30, which is after the jury has been instructed but before they've retired to deliberate, Mr. Schamald not once but twice told the District Court judge that he had no objections to the instructions she had given. And the District Court judge properly relied on that statement. And that's why the proper standard of review is plain error. But before I address the standard of review, which I know is something that the Court needs to look at because that's the lens through which the decision will be made, I would like to direct the Court's attention to what the judge did instruct and what Williams requires. So the judge did not have to instruct this jury that Mr. Suarez had to intend to attempt to intend to influence. He had to intend to commit the crime of witness tampering, and he had to commit at least one step in furtherance of that crime towards his criminal purpose. And here's what the Court said. These are her words, simply inserting the definition of knowingly, which she gave to the jury, where she said knowingly, which is the word in the statute. To find Mr. Suarez guilty, you must find that Suarez voluntarily and purposely, and not by accident or mistake, intimidated, threatened, corruptly persuaded, or engaged in misleading conduct towards Barbara Houses. And that he did so, in other words, that he did that conduct, intending to influence, delay, or prevent her testimony.  And that substantial step corroborated his criminal purpose. Intent, intent, intent. But you're not – are you reading verbatim? What I did, Your Honor, is I inserted into her statement – she originally charged the jury he had to knowingly intimidate, threaten, et cetera, and then two sentences later she defined knowingly, and she defined knowingly as voluntarily and purposely and not by accident or mistake. So what I did is I inserted voluntarily or purposely and not by accident or mistake, where she said knowingly, because that's what the jury would have done when they were trying to figure out what knowingly meant. And, Your Honor, the Supreme Court in the Bailey case – You inserted Barbara Houses and rather than – She said a witness, right. A person. Correct. Then you jump down for the corroboration is about two paragraphs down. The corroboration is, yes, several paragraphs down. Your Honor, what she – What she says in it is that – it clearly says that he had to intend to influence, delay, and prevent. And I guess he's arguing that it should have said he intended to intimidate, threaten, and corrupt. Is that what she's arguing? And, in fact, she – Yes, I believe that is, Your Honor. But, in fact, she did tell the jury that he had to intend. He couldn't just sort of accidentally intimidate her. He had to do it voluntarily and purposely. And the Supreme Court in Bailey said very specifically that the mens re for intent is purposely. And that's exactly what she instructed the jury. They had to find that he did this voluntarily and purposely and not by accident or mistake. And she repeated all of those provisions throughout her instructions. And, Your Honor, Judge White, you're absolutely correct. We have to look at the instructions as a whole. You can't look at them in isolation and pick out one word out of one sentence and then claim that there's an error. You have to look at the instructions as a whole. But let me backpedal for a second because – I'm sorry. So what do you say the intent? The intent for an attempt charge is that the defendant had to act purposely, which is exactly what this jury was instructed. He had to act voluntarily and purposely and not by accident or mistake. But he had to have an intent. It's not enough just to act. He had to act voluntarily and purposely with a particular intent. Right. And the particular intent is the intent to influence delay, and that was very specifically on three separate occasions in the Count 8 instructions told to the jury by the judge. In fact, the very last thing that she said in the Count 8 instructions was that they could convict Mr. Suarez of this offense only if they found he intended to influence delay or prevent her testimony. So if you look at the instruction as a whole, it was legally correct, which I would submit is why there was no objection made. But let me back. You also have to intend to intimidate, harass, frighten, threaten? He did not have to intend to attempt to knowingly intimidate. He had to act purposely to intimidate, threaten, corruptly persuade, or attempt to do so. And he had to do that with the intent to influence, delay, or prevent her testimony, which is what the court instructed the jury. And the reason that the court originally used the word knowingly in the first part of the instruction is that's what the statute says. And she was quoting directly from the statute, knowingly intimidate, threaten, corruptly persuade. The statute doesn't have the word intent at that point. Correct. The statute has the word intent directly before influence, delay, or prevent testimony, and that's what she did. And it comports with this court's jurisprudence in the Williams case. With respect to the standard of review, I would submit that it's clearly one of plain error. Gradsky is not the controlling case law. The controlling case law is United States v. Jones. It's Semerow. It's this court's jurisprudence on Rule 30, not civil rules of procedure. And what the rule requires is that to preserve an objection to a jury instruction, a defendant must affirmatively state his objection on the record after the court has formulated the instructions it plans to give and has given those instructions to the jury. So in other words, the cases have been clear. Just requesting an instruction isn't enough. Merely submitting an instruction isn't enough. Objecting in an off-the-record conference is not enough. Noting an objection in a trial brief is not enough. Just making an objection to the instructions not given is insufficient. That's this court's decision in the Sturman case from 1991. Rather, when the court asks you whether or not you have any objections to the instructions that the court's just given, it is the defendant's affirmative obligation, the onus is on the defendant, to inform the court as to what the error is so that it can be corrected then, before the jury retires to deliberate, not in an unnecessary retrial. It's not a game of gotcha. So when a district court judge asks you on the record, do you have any objections, and your answer is no, Your Honor, the court can and should rely on the fact that no means no, that you have no objections. She's not required to try to divine that you're maintaining an objection that you noted two months earlier in a 52-page trial brief and that you're still somehow pursuing that objection even though you forfeited seven different opportunities to bring to the court's attention the fact that you disagree with that particular instruction. And with respect to the process, I know there were a number of questions that were asked about the process. I just want to address that very briefly because I think there were some misstatements about both the process and the record. What the judge did in her pretrial order, and this court's jurisprudence is clear, the judges have discretion to determine how they're going to put together jury instructions. She did something that's very standard in the Northern District. She issued an order. The parties submitted joint pretrial briefs. All of the defendants submitted jointly a pretrial brief. The government submitted a pretrial brief. But before that even happened, we were directed to work together on jury instructions. And to submit our proposed jury instructions, she called it an annotated set that would note anybody's objections. And as clear in the record, only Defendant Giorgio participated in that process. And he was not, as counsel just stated, in the process of plea negotiations at the time that we were working on the joint jury instructions. The record's clear. He decided to plead guilty just very, very shortly before the trial. How is it possible that Judge Suarez's counsel was excluded from that? He wasn't excluded. The jury instructions were sent to all counsel. The record's clear on this. And they were to submit back to us those that they agreed with, those that they disagreed with, so that we, the onus was on us, to compile the joint set. And we noted in there that we only had contact from Defendant Giorgio's lawyer. But they were working together. They had a joint defense agreement. That's in the record. And they filed a joint trial brief, all three defendants together. They didn't file individual trial briefs. And so the assumption was these were the objections that they had, and they were noted. And so, for example, the willfully instruction that Mr. Schammel referred to was not just noted in the defendant's joint trial brief. There was a notation in the annotated set of jury instructions that was submitted to the court by the government that there was an objection to the willfully instruction. And so she had an idea of what it is that people were objecting to and why, so that she could properly rule on it. And as the record is clear, she started off the jury conference by telling us, this is my template, I'm working from this document, and not a single objection was made to the attempt to instruction in that jury charge conference. And then the next day, when she gave us the charge that she was going to give, there was a sidebar where jury instructions were discussed. No objection was made to the attempt to instruction. After closing arguments, there was another sidebar where we talked about jury instructions. No objection was made to the attempt to instruction. And then, of course, as you know, after she instructed the jury, she did exactly what Rule 30 requires her to do. She brought counsel to the bench out of the hearing of the jury and asked if there were any objections to the charge she had just given. And the answer was no. And the answer was no because, as I've said, the charge that she gave was legally correct. Let me just very briefly touch on some of the other issues that were raised on appeal, and that is the question of whether or not this court could engage in a harmless error analysis, which clearly the court could. If you look at the case law very recently out of this court, United States v. Miller, there was a jury instruction issue in that case. That's the Amish beard-cutting case. And the court engaged in a lengthy, in that case, there was an element of the offense that the circuit court determined had been omitted from the jury instruction, and the court engaged in a lengthy analysis of whether or not it was harmless error and concluded in that case that it was not. And also in Nader v. United States, a case out of the United States Supreme Court, they said that omitting an element of the offense is not per se plain error, that a jury instruction that omits an element of the offense differs markedly from the constitutional violations we have found to defy harmless error review. So were the court to go down that route, the court would need to engage in a harmless error analysis, and it is our position that given not just the number of times that the judge instructed the jury on intent, but also the evidence that was presented in the case, that the court would inevitably conclude that if there was an error, which there was not, that it was harmless. Very quickly on the double jeopardy issue that the defendant has raised in his brief to this court, there again it's very clear that the standard of review is plain error. Rule 12B, one of the federal rules of criminal procedure, dictate that a defendant is required to raise jeopardy in a motion prior to trial that did not happen here. It was raised for the first time in his motion for a judgment of acquittal or a new trial after the jury's verdict. So this court has to look at whether or not there was plain error. And the most important piece of the double jeopardy claim is that jeopardy has only attached once. So there's very clear case law that jeopardy only attaches when the jury has been sworn. Mr. Suarez has been put in jeopardy only once. It's a mere speculation that somehow the government could or would charge him again with intimidating the same witness in connection with the same investigation in the future and that he would then at that point be in jeopardy a second time. Were that crazy scenario to happen, he would then have a legitimate double jeopardy claim. But today, as I stand here, it's wholly speculative. And with respect to that, I would say, Your Honors, I think it's very clear that Count 8 was charged properly. You don't have to charge each manner, each mechanism by which somebody intimidated a witness as a separate offense. In fact, I think if we did, we would have gotten a multiplicity claim from the defense. But rather, what we did, and very clearly in Count 8, is we charged that Benjamin Suarez intimidated Barbara Housis in connection with a single ongoing federal criminal investigation three different ways. Continuing course of conduct, very close in time, and based on this court's jurisprudence, as recently as last week in the Eaton case, the jury didn't even have to be unanimous as to which one of those three brute facts, as this court said, it found Suarez had engaged in. It just had to be unanimous that he tampered with Barbara Housis' testimony. So there's no issue with respect to how the count was charged. And then lastly, the piece that's hanging out there about unanimity and whether or not, we don't know which one they were unanimous on, A, B, or C. What we do know is despite the fact that by law they didn't have to be unanimous, we know that they were. Because the judge, at defendant's request, pulled the jury. He says that she didn't in the brief, but it's clear in the record that she did. She pulled the jury and asked each juror, were you unanimous as to one or more, the exact polling question that defense counsel agreed to? And the answer from each of the jurors was, yes, I was. Yes, we were. So you say that under Eaton and other cases, the law would be that four of them could have thought that the letter was intimidating and four of them could have thought that the mass attack on her sanity was intimidating and four could have thought that the third item was. Exactly correct, Your Honor. But here we know that they were, in fact, unanimous on one, two, or three of them. We just don't know which one. But that doesn't fit into the double jeopardy claim because at the end of the day, what the government can't do is charge him again with the same offense. The offense not being that he sent the letter. The offense being that he intimidated Barbara Constance. Even if they came up with a fourth letter. Right. We couldn't charge her. Exactly. Precisely. And if there are no further questions, thank you very much. I appreciate it, Your Honor. Anomaly, you have your seven minutes for rebuttal. I have various messy papers. Your Honor, if I may start, Judge Boggs, with a question that you'd asked about the language of the statute. I think it's just important to note that this was the attempt. This wasn't the completed act. This was an attempt. So it's a different issue. And when government counsel was just up, she talked about Rule 30D and said that Rule 30D is clear that something has to be raised as though it has to be raised orally or on the record. And that's not what Rule 30D says at all. I know that Your Honors know what Rule 30D says, which is that it has to be raised before the jury goes back. And it was raised here. It was raised in writing. And unlike the cases government cites to the Jones case, which was a request, not an objection. This clearly was an objection. Unlike, and I'm going to mispronounce it, the Semero case, which had no objection. Unlike these cases that the government wants to focus on, this case is just like Gradsky. And it's so important. I know the government doesn't want to pay attention to Gradsky, but Rule 30, Federal Rule Criminal Procedure 30, and Civil Procedure 51, they're essentially identical. And the circuit has gone on to say on multiple occasions that when you're dealing with this, it's not limited just to the civil context. And so just like Gradsky, there's a written objection. It's never waived. It's never dropped. The judge says, this is what I'm going to do. This is where we are. And we go in the back, and the judge says, I have reviewed all of your submissions. I have looked at your submissions. I have not rejected your submissions. I have not decided not to accept part of your submissions. I'm taking the government's submissions, even though they, in fact, do not follow the letter of my pretrial order because they do not spell out with specificity what objections would be, even as they relate to Mr. Giorgio. They just mention them. And I'm not rejecting the submissions that were made by Mr. Suarez or SCI. In fact, I reviewed them carefully. So when the judge tells you, when a trial judge says to you, I've reviewed them. This is what I'm going to do. These are the instructions I'm going to give, and then tells you what the instructions are and tracks the government on that particular one versus the knowingly, right, which was the instruction that had to do with the substantive offenses, where she adopted almost the exact language that were in our written objections. So she adopted them on those. So the next day, when the judge comes out and says, these are what I'm giving, which is exactly what she told us the day before she was going to give, and they are exactly as she told us that she was going to give them, under Gradsky, there's no need to do anything else. You don't need to stand up and say, Your Honor, just to remind Your Honor, we objected in writing, Your Honor looked at it, Your Honor reviewed it, and rejected it, but I want to preserve this yet again. Because that's just not the law in this circuit. How can you object to something that hasn't happened? I'm sorry, Your Honor? Ask the question. How can you object to something that hasn't happened? When you wrote your suggested trial brief, she hadn't decided what she was going to give. She had not. So the government had submitted what they wanted as proposed jury instructions, and we objected to their proposed jury instructions and offered an alternative. So in my view, Your Honor. But you still didn't know what she was going to give until sometime later. My question is, how do you object to something that you haven't given? Would you like to say something, sir? I'm sure he'd like to say a lot of things, Your Honor. I think the question here, it happens often in all kinds of contexts in a trial context, whether it's 404B evidence or other things that the government says that they're going to propose, you file a written objection. And here, when you're filing your jury instructions before the case starts, and you have a case where there is no argument to be had on the factual basis of the claims, nobody's arguing the facts here. Nobody's arguing that this is Mr. Suarez's handwriting or that the money ultimately made its way to these candidates. There's no question of facts. The entire case was on intent. So when we are preparing this case for trial, you are focused, we, as trial lawyers, are focused on intent. So we submit our written objections on intent. Now, do you understand how, as a trial judge, you tell people, this is the document I'm working from. You both have it in front of you. She didn't say, this is what I'm giving. I've decided this is it. Take it or leave it. She said, this is what I'm working from. And you go through a document, and it doesn't have the issues not in front of her. I don't see how you can say that it's preserved. I guess I don't understand, Your Honor, how, when it's in writing, in bold type. It was something that was a pre-trial. That was something you submitted in writing before the trial. Correct. Now you're doing jury instructions. Correct. And you can tell from what she's saying that she thinks she has everything in front of her. She has a document that has within it objections, right? It has certain objections. Let me, if I can, just for the purpose of correcting Your Honor's underlying assumption here. She had documents, plural. She said, I have carefully, and she said this later on the record, I think even earlier on the record, I have carefully reviewed all of the briefs, plural. When we go into chambers, and this is a difficult, I don't know why sometimes courts decide to do these things. They're so important in chambers, not the record. I mean, there wasn't even a court personnel or staff. But the attorney can make a record at any time he wants to. Absolutely. So don't blame the judge. That's pretty common. And it's pretty common when you come up. I've tried a lot of lawsuits. Forget that I had tried cases as a judge. I've tried them on that side. If I had an objection, that's when I'd make it. And I'd make it every time she talked about it. I understand Your Honor's position on that. And if we were standing here and I did not have the benefit of a written document with bold type that says exactly what we said, which is an objection, and that's where it is, and if the law wasn't Gradsky, and that's not where things stood, Your Honor would have a very valid point to go in that direction. Is it correct that this no objection after the reading was at the bench, so you didn't even have a question of interrupting the jury or something? Yeah, I believe that's correct. I believe it was at the bench. And as memory serves, the way it came across was, did I read them correctly? Because I think if you look in the record, there's actually one point when the instructions were read that the judge actually misstated a different instruction. It's not before the court, but in the record. And she then went and corrected it. She brought it up and said, oh, I made a mistake in how I read it. And so really that was the context in which that was given. So are you saying that at the end, the question she asked was not, Counsel, do you have any objections? The question was, did I read it correctly? The way I perceived it, Your Honor, was not, do you have any other objections? Do you want to renew your objections? It wasn't that at all, because if it was, I think I would agree with the judge that this is a situation where you do renew it in that situation. And if I may just finish that point because my time has run, this would be the first time that this has ever come down in this circuit that you have to then reiterate what is already a written objection on the record. Well, it's not simply that. It's just the, it seems clear that the judge was working off of a document that she understood had your objections in it, and you did nothing to make it clear. But I have a different question, if that's okay. I don't understand your double jeopardy argument. Can you tell me what it is? Yes, Your Honor. When the way that it was charged, the A, B, and C, and we had this discussion about how it was going to be the disjunctive or the conjunctive, and the court over our objections basically amended it to present it to the jury. Our position is, if you look at A, B, and C, and we lay this out pretty clearly, I think, in the brief, they happened, this is not a continuing course of conduct. This is not, this is the way the government counsel, that they would have a multiplicity argument, that it was, he was, Mr. Suarez was somehow doing this intimidation campaign, right? These are completely separate incidents. You know, a casual conversation at a firm retreat with one of his best friends about memory loss when she's suffering from cancer, a letter that, frankly, was an attack on Ms. Rendon, and doesn't even mention Ms. Housis by name. It's not about Ms. Housis. It's about Ms. Rendon. And then the letter that was sent to her house about, you know, take a look at this. Is this correct to do an affidavit? Those three things are completely separate and distinct acts. They're completely separate and distinct acts, not charges as an ongoing. But they were all, they were charged. They're specifically charged. Correct. It was a trial. It was. How can you charge that again? I don't understand. What is the argument? The argument is, without knowing which of those things that he was convicted on, we don't know where sort of the line is drawn, because it's, Judge Boggs raised this issue, is four on one thing, four on another, and four on yet another. You are saying that they could charge you with having done it by letter rather than having done it by the. Correct. That's our position. Okay. Thank you, counsel. Let me just say, as a matter of good practice, there's no rule against it, but unless he's in desperate trouble, running up with notes doesn't help us understand the case. Thank you. The case will be submitted. The remaining cases will be submitted on briefs, and the clerk may adjourn court.